JOURNAL ENTRY AND OPINION
{¶ 1} Defendants-appellants, American Greetings Corporation and Richard Bastian, appeal from the judgment of the Cuyahoga County Common Pleas Court that denied their motion to stay proceedings and compel arbitration. For the reasons that follow, we affirm.
 {¶ 2} The record reveals that plaintiff-appellee, Naiel Ghanem ("Ghanem"), was employed by defendant-appellant, American Greetings Corporation ("American Greetings") from September 1999 until sometime in February 2002. Before being offered employment, Ghanem completed an application for employment, which contained a "Pre-Employment Statement" that, among other things, authorized American Greetings to conduct a background investigation and required Ghanem to submit to a physical examination. Also included was the following provision:
 {¶ 3} "I understand that American Greetings * * * reserves the right to change, amend, or terminate its existing policies, benefits, rules and regulations with or without notice. If employed, I hereby agree to conform to the rules and regulations of the Company, including the Company's ADR Policy (called `Solutions') applicable to certain employment disputes, as they may be amended from time to time."
 {¶ 4} In September 2002, Ghanem filed a complaint against American Greetings and its employee, Richard Bastian ("Bastian"), alleging that Ghanem was the victim of ethnic/national origin discrimination and that his discharge was retaliatory. Ghanem further sought a declaration that he was not required to participate in the alternative dispute resolution ("ADR") program offered by American Greetings. American Greetings and Bastian (collectively referred to as "American Greetings") moved to stay litigation and compel arbitration based on the arbitration provision contained in the employment application signed by Ghanem. Ghanem opposed the motion on the basis that the arbitration provision was unenforceable because (1) it was non-binding, relying on Schaefer v. Allstate Ins. Co.
(1992), 63 Ohio St.3d 708; (2) there was no valid contract to submit to arbitration; and (3) it was unconscionable. The court denied the motion pursuant to Schaefer.
 {¶ 5} American Greetings is now before this court and in its sole assignment of error complains that the trial court erred in denying this motion.
 {¶ 6} Arbitration agreements are generally favored in the law as a less costly and more efficient method of settling disputes. See Gerig v.Kahn, 95 Ohio St.3d 478, 2002-Ohio-2581, at ¶ 20; Kelm v. Kelm
(2001), 92 Ohio St.3d 223, 225. A presumption favoring arbitration arises when the claim in dispute falls within the scope of the arbitration provision. An arbitration clause in a contract is generally viewed as an expression that the parties agree to arbitrate disagreements within the scope of the arbitration clause, and, with limited exceptions, an arbitration clause is to be upheld just as any other provision in a contract. See Council of Smaller Enterprises v. Gates, McDonald Co. (1998), 80 Ohio St.3d 661, 668; see, also, Williams v. Aetna Fin.Co. (1998), 83 Ohio St.3d 464, 471.
 {¶ 7} Codified at R.C. Chapter 2711, the Ohio Arbitration Act sets forth a trial court's role in construing and enforcing such agreements. Specifically, R.C. 2711.01(A) governs the validity of arbitration provisions and provides, in relevant part:
 {¶ 8} "A provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract, * * * or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract."
 {¶ 9} R.C. 2711.02 thereafter provides:
 {¶ 10} "If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement * * *."
 {¶ 11} Nothing in Ohio's Arbitration Act indicates that a special or different standard governs review of a trial court decision under the Act. Rather, review of trial court determinations as to whether proceedings should be stayed on the ground that the parties agreed to submit their disputes to arbitration should proceed like review of any other court decision finding an agreement between parties. That is, a reviewing court accepts findings of fact that are not "clearly erroneous" but decides questions of law de novo. First Options of Chicago, Inc. v.Kaplan (1995), 514 U.S. 938, 947-48, 115 S.Ct. 1920, 1926,131 L.Ed.2d 985; see, also, Garcia v. Wayne Homes, LLC (Apr. 19, 2002), 2nd Dist. No. 2001 CA 53, 2002 Ohio App. Lexis 1917; cf. Harper v. J.D. Byrider ofCanton, 148 Ohio App.3d 122, 2002-Ohio-2657, at ¶ 16; Harsco Corp.v. Crane Carrier Co. (1997), 122 Ohio App.3d 406, 410; Butcher v. BallyTotal Fitness Corp., Cuyahoga App. No. 81593, 2003-Ohio-1734, at ¶ 23. The issue of whether a controversy is arbitrable under the provisions of a written contract is a question of law for the trial court to decide. Gibbons-Grable Co. v. Gilbane Bldg. Co. (1986), 34 Ohio App.3d 170,172.
 {¶ 12} Under R.C. 2711.02, a trial court is required to stay proceedings instituted in its court when a party demonstrates that an agreement exists between the parties to submit the issue to arbitration. In order for an arbitration agreement to be enforceable, however, the agreement must apply to the disputed issue and the parties must have agreed to submit that particular issue or dispute to arbitration. Harmonv. Philip Morris Inc. (1997), 120 Ohio App.3d 187, 189; Ervin v. AmericanFunding Corp. (1993), 89 Ohio App.3d 519; see, also, ABM Farms v. Woods
(1998), 81 Ohio St.3d 498, 500.
 {¶ 13} Moreover, a plurality of the Ohio Supreme Court in Schaeferv. Nationwide Mut. Ins. Co., 63 Ohio St.3d 708, opined that an agreement to arbitrate must be final and binding in order to be enforceable.
 {¶ 14} "For a dispute resolution procedure to be classified as `arbitration,' the decision rendered must be final, binding and without any qualification or condition as to the finality of an award whether or not agreed to by the parties. The decision may only be questioned pursuant to the procedure set forth in R.C. 2711.13 on grounds enumerated in R.C. 2711.10 and 2711.11. This is so even if a qualification on the finality of the award is mutually agreed to by the parties. When parties agree to make an award rendered in an `arbitration' procedure appealable, the proceeding is no longer an `arbitration.'" Id. at 711.
 {¶ 15} Appellate decisions from this court after Schaefer have addressed the plurality nature of the decision and declined to follow its reasoning. See Kolcan v. Western Res. Mut. Cas. Co. (Sept. 15, 1994), Cuyahoga App. Nos. 65582 and 65790, 1994 Ohio App. Lexis 4082; see, also, Maryland Ins. Group v. Marks (Dec. 28, 1994), Cuyahoga App. No. 67514, 1994 Ohio App. Lexis 5943. Other appellate courts, including this court, have followed Schaefer despite its plurality nature. See Spalsburyv. Hunter Realty, Inc. (Nov. 30, 2000), Cuyahoga App. No. 76874, 2000 Ohio App. Lexis 5552; Aetna Cas. Sur. Co. v. Curci (Dec. 8, 1993), 9th Dist. No. 93CA005604, 1993 Ohio App. Lexis 5943; Gielty v. IntegrityBuilders (Dec. 26, 1996), Cuyahoga App. No. 69760, 1996 Ohio App. Lexis 5825; Moczulski v. Westfield Ins. (Feb. 23, 1995), Cuyahoga App. No. 66868, 1995 Ohio App. Lexis 665.
 {¶ 16} More recently, the Ohio Supreme Court, in Miller v.Gunkle, 96 Ohio St.3d 359, 2002-Ohio-4932, had the opportunity to address and discuss several issues dealing with arbitration. Among others, theMiller court addressed whether an arbitration panel had the authority to award prejudgment interest or to reconsider a previous award, issues not present in the case before this court. Id. at ¶ 9.
 {¶ 17} In setting forth the law, however, a majority of theMiller court quoted Schaefer as to the final and binding nature of arbitration as quoted in this opinion at page six. Id. at ¶ 10. Because "the law stated in a Supreme Court opinion is contained within * * * its text," the Miller court's reliance on this language makes it the law of this state. See S.Ct.R.Rep.Op. 1(B)(1). Therefore, in order for a dispute resolution procedure to be classified as "arbitration," the decision rendered "must be final, binding and without any qualification or condition" as to its finality. Any decision that lacks finality, cannot be considered the result of a valid arbitration procedure.
 {¶ 18} We can only conclude, therefore, that the dispute resolution policy program established by American Greetings and set forth in its Solutions Handbook is not a valid arbitration procedure because it is not binding on both parties. It is of no consequence that a decision rendered as a result of arbitration has the potential to be binding upon the employer. Such a decision only becomes binding in the event that the employee accepts the decision of the arbitrator. Because the employee controls the finality of the decision and is, therefore, non-binding on that party, a decision rendered as a result of the dispute resolution procedure established by American Greetings lacks the finality necessary for it to qualify as a true arbitration procedure.
 {¶ 19} Notwithstanding, American Greetings argues in the alternative that, even if its ADR policy is unenforceable under state law, it would still be enforceable under federal law, i.e., the Federal Arbitration Act ("FAA"), codified at Section 1 et seq., Title 9, U.S. Code. Succinctly, it argues that the FAA preempts state law and "federal courts regularly compel agreements to mediate under the [FAA]."
 {¶ 20} "The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." Volt Information Sciences, Inc. v. Bd. of Trustees (1989)489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed 488. Moreover, the FAA does not itself create federal question jurisdiction. Roadway Package Sys. v.Kayser (C.A. 3, 2001), 257 F.3d 287, 291 fn. 1, citing Moses H. ConeMem. Hosp. v. Mercury Constr. Corp. (1983), 460 U.S. 1, 25 fn. 32,103 S.Ct. 927, 74 L.Ed.2d 765. As such, the issue becomes one of choice of law and not jurisdiction. The issue in this case then becomes whether, under federal law, arbitration agreements need to be binding in order to be valid and enforceable in the first instance.[1] We find no difference between the requirement for finality under federal or state law.
 {¶ 21} Section 2, Title 9, U.S. Code, by its very terms, requires finality and, thus, must be binding in order to be enforceable.
 {¶ 22} "[A]n agreement in writing to submit to arbitration an existing controversy arising out of such a contract * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
 {¶ 23} The Third Circuit came to the same conclusion in Dluhos v.Strasberg (C.A. 3, 2003), 321 F.3d 365 wherein it decided that a nonbinding dispute resolution procedure did not constitute arbitration and was therefore not subject to the FAA.
 {¶ 24} Even if this statute were to be construed to the contrary, we note that where the parties have agreed that the law of a particular state is to be applied there is no preemption by the FAA. Volt,489 U.S. at 470. Reviewing the terms of a construction contract under California law, the Volt court held "that application of the California statute is not pre-empted by the Federal Arbitration Act * * * in a case where the parties have agreed that their arbitration agreement will be governed by the law of California." Id.
 {¶ 25} As in Volt, Paragraph 16 of the Rules and Procedures section of the Solutions Handbook provides that the state or federal substantive law that "would be applied by a United States District Court sitting where the events giving rise to the claim took place" is applicable and, if that law is silent, then the law of the State of Ohio applies. Without any contrary authority rendered by the federal district court on this precise issue, the law of this state would apply. UnderSchaefer and Miller discussed previously, a decision rendered under an agreement to arbitrate must be final and binding in order for the agreement to be enforceable. Since such a decision could not be final and binding in this case, the trial court did not err in denying the motion to stay and compel arbitration.
 {¶ 26} American Greetings' assignment of error is not well taken and is overruled.
Judgment affirmed.
Diane Karpinski, P.J., and Sean C. Gallagher, J., Concur
[1] It is true, as American Greetings submits, that a valid arbitration agreement is enforceable and, as such, a complaining party can be compelled to present his or her grievance to arbitration as provided in the agreement. This is true, however, under both federal and state law and is not the issue in this case.